## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Chervon McLittle, Robert Whittie, Peggy Moon, Alise White, Kenneth Gooden, Jennifer Telesz, George Harper, Bridgette Vaughn, and Erica Ross<br><br>       Plaintiffs,<br><br>v.<br><br>Stellar Recovery Incorporated<br><br>       Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE MICHIGAN OCCUPATIONAL CODE, THE TELEPHONE CONSUMER PROTECTION ACT, AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## **PARTIES**

1. Plaintiff, Chervon McLittle ("Ms. McLittle"), is a natural person who resided in Detroit, Michigan, at all times relevant to this action.

2. Plaintiff, Robert Whittie ("Mr. Whittie"), is a natural person who resided in Warren, Michigan, at all times relevant to this action.

3. Plaintiff, Peggy Moon ("Ms. Moon"), is a natural person who resided in St. Louis, Michigan, at all times relevant to this action.

4. Plaintiff, Alise White ("Ms. White"), is a natural person who resided in Detroit, Michigan, at all times relevant to this action.

- 1 -

5.  Plaintiff, Kenneth Gooden ("Mr. Gooden"), is a natural person who resided in Detroit, Michigan, at all times relevant to this action.

6.  Plaintiff, Jennifer Telesz ("Ms. Telesz"), is a natural person who resided in Utica, Michigan, at all times relevant to this action.

7.  Plaintiff, George Harper ("Mr. Harper"), is a natural person who resided in Flint, Michigan, at all times relevant to this action.

8.  Plaintiff, Bridgette Vaughn ("Ms. Vaughn"), is a natural person who resided in Pontiac, Michigan, at all times relevant to this action.

9.  Plaintiff, Erica Ross ("Ms. Ross"), is a natural person who resided in Pontiac, Michigan, at all times relevant to this action.

10. Defendant, Stellar Recovery Incorporated ("Stellar" or "Defendant"), is a Florida Corporation that maintained its principal place of business in Kalispell, Montana, at all times relevant to this action.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

12. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's claims under the Michigan Occupational Code ("MOC"), Mich.

- 2 -

Comp. Laws § 339.901, *et seq.*, because those claims share a common nucleus of operative facts with Plaintiffs' claims under the FDCPA. S*ee Litt v. Midland Stellar, Inc.*, 2014 U.S. Dist. LEXIS 66658 (E.D. Mich. May 15, 2014) (in FDCPA case, supplemental jurisdiction exercised over claims under MOC).

13. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## JOINDER

14. Rule 20 of the Federal Rules of Civil Procedure provides, in part:

(a) PERSONS WHO MAY JOIN OR BE JOINED.

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

*See* Fed. R. Civ. P. 20(a).

15. "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mineworkers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138 (1966).

16. "Rule 20 should be viewed in light of the overarching policy of Rule 1 which

- 3 -

requires that the rules 'be construed and administered to secure the ***just, speedy, and inexpensive*** determination of every action and proceeding.' Fed. R. Civ. P. 1 (emphasis added)." *Patrick Collins, Inc. v. Doe*, 282 F.R.D. 161, 166 (E.D. Mich. 2012).

17. "'The purpose of [Rule 20] is to promote trial convenience and expedite the determination of disputes, thereby preventing multiple lawsuits. Single trials generally tend to lessen the delay, expense and inconvenience to all concerned.'" *Id.*; *quoting Mosley v. General Motors Corp*., 497 F.2d 1330, 1332 (8th Cir.1974).

18. The rule "does not require that ***all*** questions of law and fact raised by the dispute be common, but only that ***some*** question of law or fact be common to all parties." *Mosley v. General Motors Corp*., 497 F.2d at 1332 (emphases included).

19. "The term 'transaction' is flexible, and claims arise out of the same transaction or occurrence so long as they are logically related events entitling a person to legal relief." *Nucorp, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 187547, *12 (E.D. Mich. Oct 18, 2012); *citing Mosley,* 497 F.2d at 1333.

20. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in

- 4 -

a single proceeding. Absolute identity of all events is unnecessary. *Mosley*, 497 F.2d at 1332.

21. Allegations of a company-wide policy that violates federal law have been held sufficient to establish that multiple plaintiffs' claims "arose out of the same series of transactions or occurrences." *See* Mosley, 497 F.2d at 1334.

22.  In the FDCPA context, allegations by multiple plaintiffs that they were subjected to the same collection practices by a single debt collector support joinder under Rule 20. *See, e.g., Scott v. Fairbanks Capital Corp.*, 284 F.Supp. 2d 880, 888-89 (S.D. Ohio 2003).

23. Joinder is particularly appropriate at the pre-trial stage of litigation where "the alleged acts occurred are quite similar for each [p]laintiff with the majority of each [p]laintiff's allegations occurring [during a limited time period]." *See Nelson v. Chertoff*, 2008 U.S. Dist. LEXIS 82981, *16 (N.D. Ill. Sep. 10, 2008).

24. In the TCPA context, calls received by multiple plaintiffs from the same debt collector using an autodialer support joinder under Rule 20. *See, e.g., Blair v. CBE Group, Inc.*, 2013 U.S. Dist. LEXIS 150996, *17-18 (S.D. Cal. Oct. 17, 2013); *Desai v. ADT Sec. Servs., Inc.*, 2011 U.S. Dist. LEXIS 77457, *4-8 (N.D. Ill. July 18, 2011).

## ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS

25. At all times relevant to this action, Stellar collected consumer debts.

26. Stellar regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

27. The principal source of Stellar's revenue is debt collection.

28. Stellar is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

29. Stellar is a "collection agency" as that term is defined in the MOC, Mich. Comp. Laws § 339.901(b).

30. As described, *infra*, Stellar contacted each Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

31. Each alleged obligation Stellar was seeking to collect is a "debt" as defined by 15 U.S.C. § 1692a(5).

32. Each alleged obligation Stellar was seeking to collect is a "debt" within the meaning of Mich. Comp. Laws § 339.901(a).

33. Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

34. Each Plaintiff is a "consumer" as defined by the Mich. Comp. Laws § 339.901(f) and is a person whom the MOC was intended to protect.

35. Before Stellar began contacting each Plaintiff, it and each Plaintiff had no prior business relationship and each Plaintiff never provided express consent to Stellar to be contacted on his or her cellular telephone.

36.   Within the past twelve (12) months, Stellar called each Plaintiff on multiple occasions in connection with the collection of a debt.

37.   On several occasions, within the past forty-eight (48) months, the dates of which will be discovered through discovery, Stellar willingly and knowingly used an automatic telephone dialing system (ATDS) to call each Plaintiff on his or her cellular phone multiple times in violation of the TCPA.

38.   Stellar used a predictive dialer system to call each Plaintiff.

39.   Stellar used a LiveVox predictive dialer system to call each Plaintiff.

40.   Each Plaintiff, on at least one occasion, communicated his or her desire that Stellar cease calling him or her.

41.   Notwithstanding these communications, Stellar continued to call each Plaintiff in connection with the collection of a debt.

42.   Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

43.   Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

44.  In this case, Stellar followed the aforementioned policy and practice when each Plaintiff communicated his or her desire that Stellar stop calling him or her.

## **LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS**

45.  Section 1692d of the FDCPA provides, in part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

46.  Where a consumer has communicated his or her desire that a debt collector stop calling, and the debt collector nevertheless continues to call the consumer, the volume and pattern of the calls may evidence intent to harass in violation of Section 1692d.  *See Majeski v. I.C. Sys., Inc.*, 2010 U.S. Dist. LEXIS 1830, *5-7 (N.D. Ill. Jan. 8, 2010).

47.  Section 1692f of the FDCPA provides, in part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

*See* 15 U.S.C. §1692f.

48.  Where a question exists as to whether a debt collector's alleged misconduct violates Section 1692f or some other section of the FDCPA, the prudent course at the pre-trial stage is to allow the consumer to pursue claims under both sections.  *See Davis v. Diversified Consultants, Inc.*, 2014 U.S. Dist.

LEXIS 87867, *25 (D. Mass. June 27, 2014); *citing Rush v. Portfolio*

*Recovery Associates, LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013).

49. Stellar's maintenance of policies and practices, which in themselves violate

the FDCPA, are further evidence of Stellar's intent to harass.  *See Anchondo*

*v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 2009 U.S. Dist.

LEXIS 32369 (D. N.M. Mar. 16, 2009) (debt collector's intent to violate the

FDCPA may be inferred by its maintenance of policies and procedures which,

in themselves, violate the FDCPA); s*ee also Kromelbein v. Envision Payment*

*Solutions, Inc.*, 2013 U.S. Dist. LEXIS 107762, *18 (M.D. Penn. Aug. 1,

2013)("company policy can be just as much a violation of [FDCPA] as the

rogue act of an individual employee.  If anything, a company policy that

violates the FDCPA is a more egregious transgression because it indicates

endemic, rather than isolated, disregard for debtor rights.")

50. The TCPA provides, in part:

> (b)  RESTRICTIONS ON THE USE OF AUTOMATED
>        TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within
>      the United States, or any person outside the United States if
>      the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency
>       purposes or made with the prior express consent of the
>       called party) using any automatic telephone dialing
>       system or an artificial or prerecorded voice—

- 9 -

* * *

   (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

51. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the person or entity subscribing to the called number at the time the telephone call is made. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *Zyboro v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶ 73.

52. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet*, 699 F.3d at 641; *Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *6-7 (W.D.N.Y. Nov. 22, 2013).

53. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that

reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 40, ¶ 72

54.  The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

55.  The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...."  47 U.S.C. § 312(f).

56.  In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute.  *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

57. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

## ADDITIONAL FACTORS SUPPORTING JOINDER

58. The witness(es) that Stellar will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

59. The information that Stellar will provide in response to interrogatories related to Stellar's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

60. The evidence that Stellar will produce in response to requests for production of documents related to Defendant's policies, practices and procedures will likely be the same, or substantially similar, for each Plaintiff.

61. Joinder will allow a single trier of fact to assess the pattern and frequency of Stellar's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

62.  Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve fairly straightforward claims that Defendant violated the FDCPA and TCPA.

## INDIVIDUAL COUNTS AS TO EACH PLAINTIFF

### *COUNT ONE – Chervon McLittle*

**Violation of the Fair Debt Collection Practices Act**

63.  In or around December of 2014, Stellar began calling Ms. McLittle on her cellular phone in an attempt to collect a debt.

64.  During the initial conversation, Ms. McLittle advised Stellar that it was calling her while she was at work and that Stellar should not call Ms. McLittle before 3:00 p.m. Eastern Time.

65.  Notwithstanding this communication, Stellar continued to call Ms. McLittle prior to 3:00 p.m. Eastern Time on her cellular phone in connection with the collection of a debt.

66.  Thereafter, Ms. McLittle communicated her desire that Stellar cease calling altogether.

67.  Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

68. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

69. In this case, Stellar followed the aforementioned policy and practice when Ms. McLittle communicated her desire that Stellar stop calling her.

70. Stellar caused Ms. McLittle emotional distress.

71. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. McLittle in connection with the collection of the debt.

### COUNT TWO – Chervon McLittle

**Violation of the Fair Debt Collection Practices Act**

72. Ms. McLittle re-alleges and incorporates by reference Paragraphs 63 through 70 above as if fully set forth herein.

73. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<u>*COUNT THREE – Chervon McLittle*</u>

**Violation of the Michigan Occupational Code**

74. Ms. McLittle re-alleges and incorporates by reference Paragraphs 63 through 70 above as if fully set forth herein.

75. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

76. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

77. Stellar's willful violations of the MOC entitle Ms. McLittle to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

<u>*COUNT FOUR – Chervon McLittle*</u>

**Negligent Violation of the Telephone Communication Protection Act**

78. Ms. McLittle re-alleges and incorporates by reference Paragraphs 63 through 70 above as if fully set forth herein.

79. Ms. McLittle was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

80. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. McLittle's cellular telephone using an

ATDS without Ms. McLittle's prior express consent or after such consent had been revoked.

### COUNT FIVE – Chervon McLittle

**Willful & Knowing Violation of the Telephone Communication Protection Act**

81. Ms. McLittle re-alleges and incorporates by reference Paragraphs 63 through 70, and Paragraph 79, above as if fully set forth herein.

82. Stellar voluntarily placed telephone calls to Ms. McLittle's cellular telephone using an ATDS.

83. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. McLittle's cellular telephone using an ATDS without Ms. McLittle's prior express consent or after such consent had been revoked.

### COUNT SIX – Robert Whittie

**Violation of the Fair Debt Collection Practices Act**

84. In mid 2014, Stellar began calling Mr. Whittie on his cellular phone in an attempt to collect a debt.

85. During one of the initial conversations, Mr. Whittie expressed a willingness to make payments to Stellar if in return Stellar would cease calling him.

- 16 -

86. Thereafter, Stellar and Mr. Whittie agreed to a payment plan whereby Mr. Whittie would make installment payments to Stellar and Stellar would cease calling Mr. Whittie.

87. Notwithstanding the agreement between Mr. Whittie and Stellar, Stellar continued to call Mr. Whittie on his cellular phone in connection with the debt within the past twelve (12) months, on an almost daily basis, sometimes multiple times a day.

88. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

89. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

90. In this case, Stellar followed the aforementioned policy and practice when Mr. Whittie communicated his desire that Stellar stop calling him.

91. Stellar caused Mr. Whittie emotional distress.

92. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Whittie in connection with the collection of the debt.

- 17 -

## *COUNT SEVEN – Robert Whittie*

## **Violation of the Fair Debt Collection Practices Act**

93. Mr. Whittie re-alleges and incorporates by reference Paragraphs 84 through 91 above as if fully set forth herein.

94. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## *COUNT EIGHT – Robert Whittie*

## **Violation of the Michigan Occupational Code**

95. Mr. Whittie re-alleges and incorporates by reference Paragraphs 84 through 91 above as if fully set forth herein.

96. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

97. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

98. Stellar's willful violations of the MOC entitle Mr. Whittie to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

## *COUNT NINE – Robert Whittie*

**Negligent Violation of the Telephone Communication Protection Act**

99.  Mr. Whittie re-alleges and incorporates by reference Paragraphs 84 through 91 above as if fully set forth herein.

100.  Mr. Whittie was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

101.  Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Whittie's cellular telephone using an ATDS without Mr. Whittie's prior express consent or after such consent had been revoked.

## *COUNT TEN – Robert Whittie*

**Willful & Knowing Violation of the Telephone Communication Protection Act**

102.  Mr. Whittie re-alleges and incorporates by reference Paragraphs 84 through 91, and Paragraph 100, above as if fully set forth herein.

103.  Stellar voluntarily placed telephone calls to Mr. Whittie's cellular telephone using an ATDS.

104.  Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Whittie's cellular telephone using an ATDS without Mr. Whittie's prior express consent or after such consent had been revoked.

<u>*COUNT ELEVEN – Peggy Moon*</u>

**Violation of the Fair Debt Collection Practices Act**

105. In or around October 2014, Stellar began calling Ms. Moon on her cellular phone in an attempt to collect a debt.

106. During the initial conversation, Ms. Moon communicated her desire that Stellar cease calling her.

107. Notwithstanding this communication, Stellar continued to call Ms. Moon on her cellular phone in connection with the collection of a debt on an almost daily basis.

108. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

109. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

110. In this case, Stellar followed the aforementioned policy and practice when Ms. Moon communicated her desire that Stellar stop calling her.

111. Stellar caused Ms. Moon emotional distress.

112. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Moon in connection with the collection of the debt.

<u>*COUNT TWELVE – Peggy Moon*</u>

**Violation of the Fair Debt Collection Practices Act**

113. Ms. Moon re-alleges and incorporates by reference Paragraphs 105 through 111 above as if fully set forth herein.

114. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<u>*COUNT THIRTEEN – Peggy Moon*</u>

**Violation of the Michigan Occupational Code**

115. Ms. Moon re-alleges and incorporates by reference Paragraphs 105 through 111 above as if fully set forth herein.

116. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

117. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

118. Stellar's willful violations of the MOC entitle Ms. Moon to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

### *COUNT FOURTEEN – Peggy Moon*

**Negligent Violation of the Telephone Communication Protection Act**

119. Ms. Moon re-alleges and incorporates by reference Paragraphs 105 through 111 above as if fully set forth herein.

120. Ms. Moon was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

121. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Moon's cellular telephone using an ATDS without Ms. Moon's prior express consent or after such consent had been revoked.

### *COUNT FIFTEEN – Peggy Moon*

**Willful & Knowing Violation of the Telephone Communication Protection Act**

122. Ms. Moon re-alleges and incorporates by reference Paragraphs 105 through 111, and Paragraph 120, above as if fully set forth herein.

123. Stellar voluntarily placed telephone calls to Ms. Moon's cellular telephone using an ATDS.

124. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Moon's cellular telephone using an ATDS without Ms. Moon's prior express consent or after such consent had been revoked.

<u>*COUNT SIXTEEN – Alise White*</u>

**Violation of the Fair Debt Collection Practices Act**

125. In or around July of 2014, Stellar began calling Ms. White on her cellular phone in an attempt to collect a debt.

126. During the initial conversation, Ms. White communicated her desire that Stellar cease calling her.

127. Notwithstanding this communication, Stellar continued to call Ms. White on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

128. One more than one occasion, Ms. White communicated her desire that Stellar cease calling her.

129. Nevertheless, Stellar continued to call Ms. White on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

130. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

131. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

132. In this case, Stellar followed the aforementioned policy and practice when Ms. White communicated her desire that Stellar stop calling her.

133. Stellar caused Ms. White emotional distress.

134. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. White in connection with the collection of the debt.

*COUNT SEVENTEEN – Alise White*

**Violation of the Fair Debt Collection Practices Act**

135. Ms. White re-alleges and incorporates by reference Paragraphs 125 through 133 above as if fully set forth herein.

136. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

### *COUNT EIGHTEEN – Alise White*

**Violation of the Michigan Occupational Code**

137. Ms. White re-alleges and incorporates by reference Paragraphs 125 through 133 above as if fully set forth herein.

138. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

139. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

140. Stellar's willful violations of the MOC entitle Ms. White to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

### *COUNT NINETEEN – Alise White*

**Negligent Violation of the Telephone Communication Protection Act**

141. Ms. White re-alleges and incorporates by reference Paragraphs 125 through 133 above as if fully set forth herein.

142. Ms. White was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

143. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. White's cellular telephone using an ATDS

without Ms. White's prior express consent or after such consent had been revoked.

*COUNT TWENTY – Alise White*

**Willful & Knowing Violation of the Telephone Communication Protection Act**

144. Ms. White re-alleges and incorporates by reference Paragraphs 125 through 133, and Paragraph 142, above as if fully set forth herein.

145. Stellar voluntarily placed telephone calls to Ms. White's cellular telephone using an ATDS.

146. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. White's cellular telephone using an ATDS without Ms. White's prior express consent or after such consent had been revoked.

*COUNT TWENTY-ONE – Kenneth Gooden*

**Violation of the Fair Debt Collection Practices Act**

147. In or around October 2014, Stellar began calling Mr. Gooden on his cellular phone in an attempt to collect a debt.

148. During the initial conversation, Mr. Gooden communicated his desire that Stellar cease calling him.

- 26 -

149. Notwithstanding this communication, Stellar continued to call Mr. Gooden his cellular phone in connection with the collection of a debt on an almost daily basis.

150. On one occasion, Stellar demanded that Mr. Gooden provide personal information, which Mr. Gooden was not comfortable providing.

151. When Mr. Gooden refused to provide the requested information, Stellar abruptly terminated the call by hanging up on Mr. Gooden.

152. Thereafter, Stellar continued to call Mr. Gooden his cellular phone in connection with the collection of a debt on an almost daily basis.

153. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

154. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

155. In this case, Stellar followed the aforementioned policy and practice when Mr. Gooden communicated his desire that Stellar stop calling him.

156. Stellar caused Mr. Gooden emotional distress.

157. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Gooden in connection with the collection of the debt.

<i>COUNT TWENTY-TWO – Kenneth Gooden</i>

<b>Violation of the Fair Debt Collection Practices Act</b>

158. Mr. Gooden re-alleges and incorporates by reference Paragraphs 147 through 156 above as if fully set forth herein.

159. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<i>COUNT TWENTY-THREE – Kenneth Gooden</i>

<b>Violation of the Michigan Occupational Code</b>

160. Mr. Gooden re-alleges and incorporates by reference Paragraphs 147 through 156 above as if fully set forth herein.

161. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

162. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

163. Stellar's willful violations of the MOC entitle Mr. Gooden to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

### COUNT TWENTY-FOUR – Kenneth Gooden

**Negligent Violation of the Telephone Communication Protection Act**

164. Mr. Gooden re-alleges and incorporates by reference Paragraphs 147 through 156 above as if fully set forth herein.

165. Mr. Gooden was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

166. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Gooden's cellular telephone using an ATDS without Mr. Gooden's prior express consent or after such consent had been revoked.

### COUNT TWENTY-FIVE – Kenneth Gooden

**Willful & Knowing Violation of the Telephone Communication Protection Act**

167. Mr. Gooden re-alleges and incorporates by reference Paragraphs 147 through 156, and Paragraph 165, above as if fully set forth herein.

168. Stellar voluntarily placed telephone calls to Mr. Gooden's cellular telephone using an ATDS.

169. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Gooden's cellular telephone using an ATDS without Mr. Gooden's prior express consent or after such consent had been revoked.

*COUNT TWENTY-SIX – Jennifer Telesz*

170. In or around August of 2014, Stellar began calling Ms. Telesz on her cellular phone in an attempt to collect a debt.

171. During the initial conversation, Ms. Telesz communicated her desire that Stellar cease calling her.

172. Notwithstanding this communication, Stellar continued to call Ms. Telesz on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

173. One more than one occasion, Ms. Telesz communicated her desire that Stellar cease calling her.

174. Nevertheless, Stellar continued to call Ms. Telesz on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

175. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

176. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

177. In this case, Stellar followed the aforementioned policy and practice when Ms. Telesz communicated her desire that Stellar stop calling her.

178. Stellar caused Ms. Telesz emotional distress.

179. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Telesz in connection with the collection of the debt.

<em><u>COUNT TWENTY-SEVEN – Jennifer Telesz</u></em>

<strong>Violation of the Fair Debt Collection Practices Act</strong>

180. Ms. Telesz re-alleges and incorporates by reference Paragraphs 170 through 178 above as if fully set forth herein.

181. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<u>*COUNT TWENTY-EIGHT – Jennifer Telesz*</u>

**Violation of the Michigan Occupational Code**

182. Ms. Telesz re-alleges and incorporates by reference Paragraphs 170 through 178 above as if fully set forth herein.

183. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

184. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

185. Stellar's willful violations of the MOC entitle Ms. Telesz to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

<u>*COUNT TWENTY-NINE – Jennifer Telesz*</u>

**Negligent Violation of the Telephone Communication Protection Act**

186. Ms. Telesz re-alleges and incorporates by reference Paragraphs 170 through 178 above as if fully set forth herein.

187. Ms. Telesz was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

188. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Telesz's cellular telephone using an

ATDS without Ms. Telesz's prior express consent or after such consent had been revoked.

<u>*COUNT THIRTY – Jennifer Telesz*</u>

**Willful & Knowing Violation of the Telephone Communication Protection Act**

189. Ms. Telesz re-alleges and incorporates by reference Paragraphs 170 through 178, and Paragraph 187, above as if fully set forth herein.

190. Stellar voluntarily placed telephone calls to Ms. Telesz's cellular telephone using an ATDS.

191. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Telesz's cellular telephone using an ATDS without Ms. Telesz's prior express consent or after such consent had been revoked.

<u>*COUNT THIRTY-ONE – George Harper*</u>

**Violation of the Fair Debt Collection Practices Act**

192. In or around July 2014, Stellar began calling Mr. Harper on his cellular phone in an attempt to collect a debt.

193. During one of the initial conversations, Mr. Harper communicated his desire that Stellar cease calling him.

194. Notwithstanding this communication, Stellar continued to call Mr. Harper on his cellular phone in connection with the collection of a debt within the last twelve (12) months on an almost daily basis.

195. On at least one occasion, Mr. Harper spoke with an individual who claimed to be a Stellar supervisor to request that the calls from Stellar stop.

196. The Stellar supervisor advised Mr. Harper that Stellar would cease calling him.

197. Nevertheless, Stellar continued to call Mr. Harper on his cellular phone in connection with the collection of a debt.

198.  Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

199. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

200. In this case, Stellar followed the aforementioned policy and practice when Mr. Harper communicated his desire that Stellar stop calling him.

201. Stellar caused Mr. Harper emotional distress.

202. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Mr. Harper in connection with the collection of the debt.

<em>COUNT THIRTY-TWO – George Harper</em>

**Violation of the Fair Debt Collection Practices Act**

203. Mr. Harper re-alleges and incorporates by reference Paragraphs 192 through 201 above as if fully set forth herein.

204. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

<em>COUNT THIRTY-THREE – George Harper</em>

**Violation of the Michigan Occupational Code**

205. Mr. Harper re-alleges and incorporates by reference Paragraphs 192 through 201 above as if fully set forth herein.

206. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

207. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

208. Stellar's willful violations of the MOC entitle Mr. Harper to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

### COUNT THIRTY-FOUR – George Harper

**Negligent Violation of the Telephone Communication Protection Act**

209. Mr. Harper re-alleges and incorporates by reference Paragraphs 192 through 201 above as if fully set forth herein.

210. Mr. Harper was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

211. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Harper's cellular telephone using an ATDS without Mr. Harper's prior express consent or after such consent had been revoked.

### COUNT THIRTY-FIVE – George Harper

**Willful & Knowing Violation of the Telephone Communication Protection Act**

212. Mr. Harper re-alleges and incorporates by reference Paragraphs 192 through 201, and Paragraph 210, above as if fully set forth herein.

213. Stellar voluntarily placed telephone calls to Mr. Harper's cellular telephone using an ATDS.

214. In addition, Stellar failed to adequately place intermittent live verification calls to Mr. Harper's cellular telephone to ensure that Mr. Harper had provided his express consent to be called at that telephone number.

215. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Mr. Harper's cellular telephone using an ATDS without Mr. Harper's prior express consent or after such consent had been revoked.

### *COUNT THIRTY-SIX – Bridgette Vaughn*

**Violation of the Fair Debt Collection Practices Act**

216. In or around August 2014, Stellar began calling Ms. Vaughn on her cellular phone in an attempt to collect a debt.

217. During the initial conversation, Ms. Vaughn communicated her desire that Stellar cease calling her.

218. Notwithstanding this communication, Stellar continued to call Ms. Vaughn on on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

219. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

220. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

221. In this case, Stellar followed the aforementioned policy and practice when Ms. Vaughn communicated her desire that Stellar stop calling her.

222. Stellar caused Ms. Vaughn emotional distress.

223. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Vaughn in connection with the collection of the debt.

*COUNT THIRTY-SEVEN – Bridgette Vaughn*

**Violation of the Fair Debt Collection Practices Act**

224. Ms. Vaughn re-alleges and incorporates by reference Paragraphs 216 through 222 above as if fully set forth herein.

225. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT THIRTY-EIGHT – Bridgette Vaughn

### Violation of the Michigan Occupational Code

226. Ms. Vaughn re-alleges and incorporates by reference Paragraphs 216 through 222 above as if fully set forth herein.

227. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

228. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

229. Stellar's willful violations of the MOC entitle Ms. Vaughn to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

## COUNT THIRTY-NINE – Bridgette Vaughn

### Negligent Violation of the Telephone Communication Protection Act

230. Ms. Vaughn re-alleges and incorporates by reference Paragraphs 216 through 222 above as if fully set forth herein.

231. Ms. Vaughn was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

232. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Vaughn's cellular telephone using an

ATDS without Ms. Vaughn's prior express consent or after such consent had been revoked.

### COUNT FORTY – Bridgette Vaughn

**Willful & Knowing Violation of the Telephone Communication Protection Act**

233. Ms. Vaughn re-alleges and incorporates by reference Paragraphs 216 through 222, and Paragraph 231, above as if fully set forth herein.

234. Stellar voluntarily placed telephone calls to Ms. Vaughn's cellular telephone using an ATDS.

235. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Vaughn's cellular telephone using an ATDS without Ms. Vaughn's prior express consent or after such consent had been revoked.

### COUNT FORTY-ONE – Erica Ross

**Violation of the Fair Debt Collection Practices Act**

236. In or around November 2014, Stellar began calling Ms. Ross on her cellular phone in an attempt to collect a debt.

237. During the initial conversation, Stellar demanded that Ms. Ross provide personal information that Ms. Ross did not feel comfortable providing.

238. Ms. Ross declined to provide the personal information requested by Stellar and communicated her desire that Stellar cease calling her.

239. Notwithstanding this communication, Stellar continued to call Ms. Ross on her cellular phone in connection with the collection of a debt within the past twelve (12) months on an almost daily basis.

240. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar disregards that communication as if it had not been made.

241. Stellar's policy and practice is that when a consumer communicates his or her desire that Stellar cease calling, but does not do so in writing, Stellar does not record that request in Stellar's records related to the debt Stellar is seeking to collect from the consumer.

242. In addition, Stellar regularly engages in a debt collection practice whereby Stellar asks a consumer to verify personal information about himself or herself after the consumer has already identified himself or herself as the person with whom Stellar is looking to speak.

243. Under Stellar's debt collection practice, if the consumer does not verify the additional personal information requested, Stellar does not adequately disclose its identity to the consumer or the purpose of the call.

244. Stellar's policy and practice of asking a consumer to verify personal information about himself or herself after the consumer has already identified

himself or herself as the person with whom Stellar is looking to speak interferes with the consumer's ability to request that Stellar stop calling.

245. In this case, Stellar followed the aforementioned policies and practices as to Ms. Ross.

246. Stellar caused Ms. Ross emotional distress.

247. Stellar violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Ross in connection with the collection of the debt.

## COUNT FORTY-TWO – Erica Ross

**Violation of the Fair Debt Collection Practices Act**

248. Ms. Ross re-alleges and incorporates by reference Paragraphs 236 through 246 above as if fully set forth herein.

249. Stellar violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FORTY-THREE – Erica Ross

**Violation of the Michigan Occupational Code**

250. Ms. Ross re-alleges and incorporates by reference Paragraphs 236 through 246 above as if fully set forth herein.

251. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(n) by using harassing, oppressive, or abusive methods to collect a debt.

- 42 -

252. Stellar willingly and knowingly violated Mich. Comp. Laws § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

253. Stellar's willful violations of the MOC entitle Ms. Ross to a civil penalty of not less than three (3) times the actual damages he sustained as a result of Stellar's violations of the MOC.

### COUNT FORTY-FOUR – Erica Ross

**Negligent Violation of the Telephone Communication Protection Act**

254. Ms. Ross re-alleges and incorporates by reference Paragraphs 236 through 246 above as if fully set forth herein.

255. Ms. Ross was the "called party" within the meaning of Section 227(b)(1)(A) of the TCPA.

256. Stellar negligently violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Ross's cellular telephone using an ATDS without Ms. Ross's prior express consent or after such consent had been revoked.

### COUNT FORTY-FIVE – Erica Ross

**Willful & Knowing Violation of the Telephone Communication Protection Act**

257. Ms. Ross re-alleges and incorporates by reference Paragraphs 236 through 246, and Paragraph 255, above as if fully set forth herein.

- 43 -

258. Stellar voluntarily placed telephone calls to Ms. Ross's cellular telephone using an ATDS.

259. Stellar willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Ms. Ross's cellular telephone using an ATDS without Ms. Ross's prior express consent or after such consent had been revoked.

## JURY DEMAND

260. Each Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

261. Each Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k.

   b. Judgment against Defendant for actual damages, statutory damages, costs and reasonable attorney's fees, plus a civil penalty of not less than three (3) times Plaintiff's actual damages, pursuant to Mich. Comp. Laws § 339.916.

   c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

- 44 -

d.  An order enjoining Defendant from placing further telephone calls to each Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

e.  For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: September 8, 2015                    By:   /s/ David M. Menditto
                                              One of Plaintiffs' Attorneys

                                              David M. Menditto
                                              Hyslip & Taylor, LLC, LPA
                                              1100 W. Cermak Rd., Suite B410
                                              Chicago, IL 60608
                                              Telephone: 312-380-6110
                                              Facsimile: 312-361-3509
                                              Email: davidm@fairdebt411.com
                                              Illinois Bar No. 6216541